UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JESSICA CATANIA,

                         Plaintiff,

   -against-

NYU LANGONE HEALTH SYSTEM,

                        Defendant.
------------------------------------------------------------X

Case No.:

COMPLAINT

PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff, JESSICA CATANIA, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendant, upon information and belief, as follows:

### Nature of the Case

1. Plaintiff complains pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601, et. seq. ("FMLA"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of Defendant's interference with Plaintiff's approved FMLA leave, and retaliation that Plaintiff suffered in the hands of Defendant due to her taking approved FMLA leave.

### Jurisdiction and Venue

2. Jurisdiction of this Court is proper under 29 U.S.C. § 2617, 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred therein.

### Parties

4. At all times relevant hereto, Plaintiff is a resident of the State of New Jersey, County of Monmouth.

1

5. At all times relevant hereto, Defendant NYU Langone Health System (hereinafter "NYU Langone") was and is a business existing under the laws of the State of New York with its principal place of business located at 550 First Avenue, New York, New York 10016.

6. At all times relevant hereto, Defendant NYU Langone owns, operates, and maintains private hospitals and medical facilities throughout New York, New Jersey and Florida.

7. At all times relevant hereto, Defendant NYU Langone employed fifty (50) or more employees for more than twenty (20) hours per week for each relevant calendar year herein.

8. At all times material, Plaintiff was a qualified employee under the Family Medical Leave Act ("FMLA"). Plaintiff worked for Defendant NYU Langone for at least 12 months and for at least 1250 hours during those 12 months. Plaintiff's work location had at least 50 employees at that location or within 75 miles of the location.

9. At all times material, all parties mentioned herein worked and/or continue to be employed with Defendant.

**Material Facts**

10. In or around April 2011, Plaintiff began employment at NYU Langone as a Revenue Integrity Analyst.

11. In or around June 2011, Plaintiff uncovered millions of dollars in missing revenue for the neurosurgery department due to incorrect billing by their then current billing vendor.

12. In or around September 2012, Plaintiff was commended for her performance and was told by management that she would have significant opportunities for advancement.

13. In or around November 2013, Plaintiff resigned due to childcare needs. Although she resigned, Plaintiff was still provided with a letter of recommendation commending her on her work performance and work ethic.

14. In or around February 2015, Plaintiff was contacted by her former manager Elizabeth Eldridge ("Eldridge"). Eldridge told Plaintiff of a recent job opening with Defendant NYU Langone as a Revenue Cycle Manager and explained that she believed Plaintiff would be a good fit for the role.

15. In or around April 2015, Plaintiff joined Defendant NYU Langone as the Revenue Cycle Manager earning approximately $112,000 per year.

16. Plaintiff was qualified for her position and always performed her duties well.

17. Throughout her employment with Defendant NYU Langone, Plaintiff consistently received praise and stellar reviews from her co-workers and superiors.

18. In or around May 2021, Plaintiff's father was diagnosed with Langerhans Cell Histiocytosis and was admitted to the hospital.

19. Plaintiff's father's Langerhans Cell Histiocytosis diagnosis was serious as defined by FMLA.

20. In or around June 2021, Plaintiff applied for FMLA leave to spend time with her ailing father.

21. On or about September 10, 2021, Plaintiff's FMLA request was approved applied retroactively to July 16, 2021.

22. On or about September 20, 2021, Plaintiff was informed by her Assistant Director, Kimberly Tuccillo ("Tuccillo") that Plaintiff was only permitted to take up to four days per month of intermittent FMLA leave.

23. As such, in September 2021, Plaintiff took FMLA leave on September 27 through September 30, 2021.

24. In October 2021, Plaintiff took FMLA leave on October 12, 25, 27, and 28, 2021.

25. While Plaintiff was on pre-approved FMLA leave, Plaintiff was illegally made to work and was expected to be available for meetings and/or phone calls.

26. For example, on September 28, 2021, during her approved FMLA leave, Plaintiff was required to be responsive to calls and emails, and to be continuously available for meetings. Further, Plaintiff had to keep working even during FMLA leave – all while caring for her ailing father.

27. On or about October 27, 2021, while on approved FMLA leave, Plaintiff was expected to work and prepare for meetings which were planned for later that week – all while caring for her ailing father.

28. On or about October 28, 2021, while on approved FMLA leave, Plaintiff was told by Tuccillo to work with a co-worker, Lauren Eisner, to prepare and finalize a presentation for a 2:00 pm meeting that same day.

29. Furthermore, Plaintiff was shown a critical attitude from Tuccillo regarding her FMLA leave, in that Plaintiff was made to feel that if she did not work during her approved FMLA, or if she continued to take FMLA leave, she would be terminated.

30. Tuccillo notified Plaintiff that employees in Plaintiff's position need to "behave in a certain way," and while referring to Plaintiff's FMLA, Tuccillo stated that taking so many days off was not something that would be tolerated.

31. Once Plaintiff began using approved FLMA time, Tuccillo would sometimes roll her eyes and shake her head at Plaintiff when Plaintiff spoke.

32. After Plaintiff began using her approved FMLA time, Tuccillo started to speak to Plaintiff in a disdainful tone and often made condescending remarks including, but not limited to, "you work hard, not smart," and "you don't know what your role is."

33. Plaintiff saw a very visible change in Tuccillo's attitude in that Tuccillo started to verbally harass Plaintiff by reprimanding her through various mechanisms, including, but not limited to, ostracizing Plaintiff, belittling Plaintiff, and speaking to Plaintiff in a passive-aggressive manner.

34. Tuccillo further began to micro-manage Plaintiff by, *inter alia*, conducting one-on-one meetings with Plaintiff, which Tuccillo referred to as "Ad Hoc Meetings," and used them to be scornful and belittling towards Plaintiff. Over the course of these one-on-one meetings, Plaintiff came to understand that the idea was never to gain clarity about Plaintiff's workload but merely to reprimand, mock, and be dismissive towards Plaintiff.

35. Tuccillo questioned Plaintiff's dedication to her employment with Defendant NYU Langone due to Plaintiff's need for FMLA leave.

36. Tuccillo would on the one hand, ask Plaintiff to use her FMLA time, telling her that she was not being efficient and should take time to clear her head. However, when Plaintiff would use her FMLA time, Tuccillo was quick to criticize and reprimand Plaintiff.

37. Tuccillo would be condescending of Plaintiff's sincerity to work and tell her to take time off and then be contemptuous of Plaintiff for doing so.

38. Plaintiff was brought to a breaking point due to the backlash she felt from taking her approved FMLA time, especially while managing issues pertaining to her father's serious medical condition.

39. On or about December 7, 2021, Plaintiff had a meeting with Tuccillo. Tuccillo berated Plaintiff and accused her of "constantly asking for accommodations" and told Plaintiff that it looks poorly on the team when Plaintiff was not present at work. Tuccillo went on to explain that she needs "a senior manager who is here and present." Tuccillo informed

Plaintiff that because of the time she had previously taken off, Tuccillo was withdrawing her pre-approved Paid Time Off ("PTO") request for the end of the month.

40. The backlash Plaintiff suffered for taking her approved FMLA leave was too much for her to handle during the time when she was caring for her extremely ill father who unfortunately, did not survive.

41. On or about December 7, 2021, Plaintiff was ultimately forced to resign due to Tuccillo's ongoing conduct towards Plaintiff.

42. The above are just some of the acts of retaliation that Plaintiff experienced while employed by Defendant.

43. Towards the end of her employment, Plaintiff was earning $149,000 as annual compensation, excluding benefits and bonuses.

44. Tuccillo blatantly retaliated against Plaintiff for taking her pre-approved FMLA leave.

45. The stress at work pertaining to Tuccillo's attitude around Plaintiff's FMLA leave resulted in Plaintiff having several emotional breakdowns. Ultimately Plaintiff suffered a constructive discharge by Defendant, for exercising her rights under Federal Law.

46. Upon information and belief, Defendant is aware of its obligations under the Family and Medical Leave Act.

47. No reasonable person in Plaintiff's position could have endured the retaliation she suffered as a result of using her approved FMLA time.

### First Cause of Action for Interference and Retaliation
### Under the Family Medical Leave Act

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

49. Section 2612(d)(2)(B) of the Family Medical Leave Act, states in pertinent part: "an eligible

employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

50. Section 2615(a) of the FMLA, states in pertinent part:

> Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

51. Defendant NYU Langone violated the section herein as set forth.

## Jury Demand

52. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the Family Medical Leave Act, 29 U.S.C. §§ 2601, et. seq. ("FMLA) by interfering with her approved FMLA leave and thereupon retaliating against her for exercising such leave;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendant's unlawful practices and conduct and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff punitive damages, including liquidated damages equivalent to 100% of the actual damages Plaintiff suffered;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendant's unlawful employment practices.

Dated: New York, New York
       May 26, 2022

By:    **PHILLIPS & ASSOCIATES,**
       **ATTORNEYS AT LAW, PLLC**

*[signature]*

Steven Fingerhut
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com