UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JESSICA CATANIA,

      Plaintiff,

    v.

NYU LANGONE HEALTH SYSTEM,

      Defendant.

No. 22-CV-4362 (RA)

MEMORANDUM
OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

 Plaintiff Jessica Catania brings this action against Defendant NYU Langone Health System, asserting claims under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et. seq*. Specifically, she alleges that Defendant interfered with her approved FMLA leave and retaliated against her for taking it, resulting in her constructive discharge. Now before the Court is Defendant's motion to dismiss the Complaint under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. For the reasons discussed below, the motion is granted.

## BACKGROUND

 The following facts are primarily drawn from the Complaint and are assumed to be true for the purposes of the present motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017). The Court also considers documents incorporated by reference into the Complaint. *Alvarez v. Cnty. of Orange*, 95 F. Supp. 3d 385, 392 (S.D.N.Y. 2015) (permitting consideration of such documents on a motion to dismiss); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (noting a "complaint is deemed to include any written instrument attached to it as an exhibit"). "Even where a document is not incorporated by reference in the complaint, the court may nevertheless

consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Noskov v. Roth*, No. 19-cv-7431 (RA), 2020 WL 4041125, at *3 (S.D.N.Y. July 17, 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). When such documents "contradict[] allegations, the document[s], not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013). In employment cases, such properly considered documents include letters of resignation and termination letters. *See, e.g., Alexander v. Bd. of Educ. Of City of N.Y.*, 648 F. App'x 118, 120 n.2 (2d Cir. 2016) ("[T]he district court properly considered [plaintiff's] termination letter."). Accordingly, in addition to the allegations in the Complaint, the following facts are also taken from Plaintiff's letter of resignation, notice of termination, intermittent leave summary, and payroll records.

**I.      Plaintiff's Employment and FMLA Leave**

Beginning in April 2015, Plaintiff was employed by NYU Langone Health System, which operates healthcare facilities throughout New York, as a "Revenue Cycle Manager," earning approximately $112,000 per year. Compl. ¶¶ 6, 15. "[I]n or around June 2021," Plaintiff requested leave under the FMLA to care for her ailing father, who had been diagnosed with Langerhands Cell Histiocytosis. *Id.* ¶¶ 18, 20. Her request for FMLA leave was approved, and she took intermittent leave between September 27 and 30, 2021, and again on October 12, 25, 26, 28, and 29, 2021. *See id.* ¶¶ 22–24; Kathryn J. Barry Aff., Ex. B-1 (Intermittent Leave Summary), Ex. B-2 (Timekeeping Records).

During these periods of intermittent leave, Plaintiff alleges that she was required to perform work related tasks, including being "responsive to calls and emails," and making herself "continuously available for meetings" on September 28, 2021. Compl. ¶¶ 26–27. She claims that

she was also specifically instructed "to work with a co-worker . . . to prepare and finalize a presentation" on October 28, 2021. *Id.* ¶ 28. Plaintiff received pay for each day of her FMLA leave. *See* Kathryn J. Barry Aff., Ex. B-1 (Intermittent Leave Summary), Ex. B-2 (Timekeeping Records).

## II. Defendant's Reaction to Plaintiff's FMLA Leave

After she began taking FMLA leave to care for her father, Plaintiff alleges that she was "shown a critical attitude" by her supervisor, Kimberly Tuccillo, and was "made to feel that if she did not work during her approved FMLA [leave], or if she continued to take FMLA leave, she would be terminated." Compl. ¶ 29. Specifically, she claims that Tuccillo instructed her to "behave in a certain way" and told her, "while referring to [her] FMLA [leave]" that "taking so many days off was not something that would be tolerated." *Id.* ¶ 30. After Plaintiff began using her approved time off, she alleges that Tuccillo "would sometimes roll her eyes and shake her head at Plaintiff" when she spoke, would speak to her "in a disdainful tone," and would make "condescending remarks including . . . 'you work hard, not smart,' and 'you don't know what your role is.'" *Id.* ¶¶ 31–32.

Tuccillo allegedly "started to verbally harass Plaintiff by reprimanding her through various mechanisms, including, but not limited to, ostracizing Plaintiff, belittling [her], and speaking to [her] in a passive-aggressive manner." *Id.* ¶ 33. Tuccillo also "began to micro-manage Plaintiff" by "conducting one-on-one meetings," and using them "to be scornful and belittling towards [her]." *Id.* ¶ 34. Over the course of these meetings, Plaintiff claims that she "came to understand" that the purpose of the discussions was "merely to reprimand, mock, and be dismissive towards [her]," and that Tuccillo "questioned Plaintiff's dedication to her employment . . . due to [her] need for FMLA leave." *Id.* ¶¶ 34–35. Tuccillo would be "condescending of Plaintiff's sincerity to work

3

and tell her to take time off and them be contemptuous of [her] for doing so." *Id*. ¶ 37.

### III.     Plaintiff's Resignation

On December 7, 2021, after Plaintiff experienced "several emotional breakdowns" because of these interactions, she was allegedly "brought to a breaking point due to the backlash she felt from taking her approved FMLA time." *Id*. ¶¶ 38, 45. She had a meeting with Tuccillo, at which "Tuccillo berated [her] and accused her of 'constantly asking for accommodations,'" telling her that "it looks poorly on the team when Plaintiff was not present at work." *Id*. ¶ 39. "Tuccillo went on to explain that she need[ed] 'a senior manager who is here and present,'" and that she was "withdrawing [Plaintiff's] pre-approved Paid Time Off ('PTO') request for the end of the month." *Id*. ¶ 39. Plaintiff asserts that the "backlash" she "suffered for taking her approved FMLA leave was too much for her to handle" while caring for her "extremely ill father" and that she was "ultimately forced to resign." *Id*. ¶¶ 40–41. She claims that "[n]o reasonable person in [her] position could have endured the retaliation she suffered as a result of using her approved FMLA time." *Id*. ¶ 47.

Although Plaintiff's letter of resignation indicated that her "last day of employment with the institution w[ould] be December 17, 2021," Kathryn J. Barry Aff., Ex. B-3, Defendant accepted her resignation as effective immediately, *see id.*, Ex. B-4 (Termination Notice). Nevertheless, Defendant paid Plaintiff through the end of her offered notice period. *See id*.

## PROCEDURAL HISTORY

Plaintiff commenced this action on May 26, 2022. On July 27, 2022, Defendant moved to dismiss under Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure. Plaintiff filed her opposition on September 2, 2022, and Defendant filed its reply September 9, 2022. Defendant also filed a motion to stay discovery pending the Court's consideration of the motion to dismiss,

which the Court granted on October 12, 2022.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (cleaned up). Thus, while the Court must "accept[] all factual allegations as true," it gives "no effect to legal conclusions couched as factual allegations." *Stadnick*, 861 F.3d at 35.

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries "the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

## DISCUSSION

### I. Plaintiff Fails to State a Claim of Constructive Discharge

Constructive discharge is limited to situations in which "an employer discriminates against an employee to the point such that [her] working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 308 (2d Cir. 2017). "Courts apply the same standard for evaluating

Title VII and FMLA constructive discharge claims." *Connolly v. Equity Servs.*, 756 F. App'x 83, 84 n.1 (2d Cir. 2019); *see also Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004) (per curiam) (applying Title VII framework to FMLA retaliation claim); *Stoler v. Inst. for Integrative Nutrition*, No. 13-cv-1275, 2013 WL 6068598, at *10 (S.D.N.Y. Nov. 18, 2013) (same); *Hamilton v. Sirius Satellite Radio Inc.*, 375 F. Supp. 2d 269, 275 (S.D.N.Y. 2005) (same). This has been described as a "demanding standard, because 'constructive discharge cases present a wors[t] case harassment scenario, harassment ratcheted up to the breaking point.'" *Spires v. Metlife Grp., Inc.*, No. 18-cv-4464 (RA), 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (quoting *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 301 (S.D.N.Y. 2011)).

Courts typically break constructive discharge claims into two parts: first, "the employer's intentional conduct," and, second, "the intolerable level of the work conditions." *Petrosino v. Bell Atlantic*, 385 F.3d 210, 229 (2d Cir. 2004). For the first, "the employer must intend to create 'intolerable workplace conditions.'" *Spires*, 2019 WL 4464393, at *9 (quoting *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000)). For the second, a plaintiff must "prove that an objectively reasonable person in the plaintiff's position would find her work conditions so intolerable as to compel resignation." *McCalla v. City of N.Y.*, No. 15-cv-8002 (LAK)(AJP), 2017 WL 3601182, at *68 (S.D.N.Y. Aug. 14, 2017) (cleaned up).

Plaintiff fails to plausibly allege facts establishing either factor here. Accordingly, the Court grants Defendant's Rule 12(b)(6) motion with respect to the constructive discharge claim.

### A. Failure to Allege Defendant Intended to Create Intolerable Working Conditions

The Complaint does not contain any allegation that Defendant "*intentionally* or *deliberately* created negative working conditions, because of [her FMLA leave], so as to compel [her] to resign." *Spires*, 2019 WL 4464393, at *10 (emphasis in original). This alone is "fatal" to

6

Plaintiff's constructive discharge claim. *Id*.

Although Plaintiff variously alleges that she was "shown a critical attitude from Tuccillo"—who, she claims, "verbally harass[ed] [her] by reprimanding her," speaking to her "in a passive-aggressive manner," and being generally "condescending," Compl. ¶¶ 29, 33, 34—she nowhere alleges that Defendant "or its supervisors acted deliberately in a way that would enable to Court to infer the intent to create an intolerable work environment" for Plaintiff, *Gonzalez v. N.Y. City Health and Hosp. Corp.*, No. 18-cv-2645 (JPO), 2019 WL 2435622, at *9 (S.D.N.Y. June 11, 2019). Far from speaking to Defendant's intent, the Complaint's allegations at most suggest that Tuccillo was an insensitive supervisor who made thoughtless remarks that made Plaintiff feel uncomfortable in light of her decision to take FMLA leave. But "something beyond mere negligence or ineffectiveness is required to constitute deliberate action on the part of the employer sufficient to support a claim of constructive discharge." *Adams v. Festival Fun Parks, LLC*, 560 F. App'x 47, 50 (2d Cir. 2014) (cleaned up); *see also Whidbee*, 223 F.3d at 74 (observing that a defendant's "lack of concern" is not enough).

Judge Failla recently addressed similar claims to those presented here in *Pompey-Primus v. Success Academy Charter Schools, Inc.*, No. 21-cv-3987 (KPF), 2022 WL 504541 (S.D.N.Y. Feb. 17, 2022). In that case, the plaintiff claimed that she had been directed "to obtain childcare for her children to ensure that she was '100% involved with work.'" *Id*. at *2. Her complaint alleged that she had been "shocked and blindsided" by this demand, and that she "intuited" that "she would be fired if she failed to obtain childcare." *Id*. Judge Failla dismissed the claim, reasoning that while the allegations may have suggested that defendant "was unaware of or indifferent to [p]laintiff's difficulties," they did not "plausibly suggest that [defendant] intended to create 'a work atmosphere so intolerable that' plaintiff would be 'forced to quit involuntarily.'"

*Id*. at *4 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 152 (2d Cir. 2003)).  The same is true here.

Granting every inference due at the 12(b)(6) stage, the Complaint simply does not allege that Tuccillo—or anyone else at NYU Langone, for that matter—specifically intended to make Plaintiff's working conditions intolerable.  Tuccillo's allegedly insensitive or even callous indifference to Plaintiff's need to take FMLA leave, accepted as true, is insufficient, as matter of law, to state claim of constructive discharge.  "[I]neffective or even incompetent . . . handling [of plaintiff's FMLA leave] does not rise to the level of deliberate action required."  *Whidbee*, 223 F.3d at 74.

### B. Failure to Allege a Reasonable Person Would Have Felt Compelled to Resign

Even assuming that Plaintiff had properly alleged Defendant intended to create intolerable working conditions as a result of her taking FMLA leave, she still fails to plausibly state a claim for relief because her Complaint does not allege that the working conditions were so intolerable that any reasonable person in her position would have believed "resignation qualified as a fitting response."  *Pa. State Police v. Suders*, 524 U.S. 129, 134 (2004).  To be sure, Plaintiff describes the "stress" that she experienced given her interactions with Tuccillo and the "emotional breakdowns" that she experienced before she "reached a breaking point."  Compl. ¶¶ 38, 45.  But her subjective responses are inadequate to state a claim of constructive discharge.  *See Nugent v. St. Luke's/Roosevelt Hosp. Ctr.*, No. 05-cv-5109 (JCF), 2007 WL 1149979, at *13 (S.D.N.Y. Apr. 18, 2007), *aff'd sub nom*, 303 F. App'x 943 (2d Cir. 2008) ("An employee's subjective perceptions do not govern a claim of constructive discharge.").  Instead, "[t]he inquiry is objective: Did working conditions become so intolerable that a reasonable person in employee's position would have felt compelled to resign?"  *Pa. State Police*, 524 U.S. at 141.

Being "unfairly criticized" by a supervisor simply does not rise to the level of intolerability

such that a reasonable person would have felt compelled to resign. *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993); *see also Clowes v. Allegheny Valley Hospital*, 991 F.2d 1159, 1162 (3d Cir. 1993) ("[I]t is clear that unfair and unwarranted treatment is by no means the same as constructive discharge."). Even allegations of "hypercritical supervision"—embodied by, for instance, "[e]xcessive questioning," "micro-management," or threats of termination—have been found to fall short "of permitting an inference of constructive discharge." *Cabrera v. CBS Corp.*, No. 17-cv-6011 (CM)(BCM), 2019 WL 502131, at *1–2 (S.D.N.Y. Feb. 8, 2019). As another judge in this district put it, "[a]n employee is not constructively discharged because she . . . receives unfair criticism, or is yelled at by supervisors." *Katz v. Beth Israel Med. Ctr.*, No. 95-cv-7183 (AGS), 2001 WL 11064, at *2 (S.D.N.Y. Jan. 4, 2011). Indeed, even substantially more serious allegations of workplace conduct than those alleged by Tuccillo here have been dismissed at the pleadings stage. *See. e.g.*, *Zik v. Waterfront Comm'n of N.Y. Harbor*, No. 11-cv-5093 (CM), 2012 WL 4785703, at *3–7 (S.D.N.Y. Oct. 4, 2012) (dismissing constructive discharge claim where plaintiff was "threatened, berated, and questioned" about leaving her home while working remotely, and "learned from 'other employees' that [the employer] did not want her returning [to work]"); *Etienne v. Wal-Mart Stores, Inc.*, 186 F. Supp. 2d 129, 136 (D. Conn. 2001) (finding that a "plaintiff's allegation that she was treated coldly" such that "her supervisors would not look at or speak to her" was insufficient to support constructive discharge).

The fact that Plaintiff resigned after Tuccillo denied her request for non-FMLA time off on December 7, 2021 is similarly unavailing, as courts consider the denial of requests for paid time off to be a "mere inconvenience." *Allen v. A.R.E.B.A. Casriel, Inc.*, No. 15-cv-9965 (KPF), 2017 WL 4046127, at *13 (S.D.N.Y. Sept. 12, 2017).

### II.      Plaintiff Does Not Allege Any Other Actionable Claim Under the FMLA

As the party invoking federal jurisdiction, Plaintiff bears the burden of establishing jurisdiction—that she is "entitled to have the court decide the merits of [her] dispute." *Allen v. Wright*, 468 U.S. 737, 750–51 (1984).  Although Plaintiff is correct that she is "not required to establish that she suffered a constructive discharge" in order to bring this action, Pl. Mem. at 3, she is required to state a claim under the FMLA.  The Second Circuit has recognized two varieties of FMLA claims, interference claims and retaliation claims, each "rooted in § 2615(a)(1)":

> In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA.  'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer.  The two types of claims serve as *ex ante* and *ex post* protections for employees who seek to avail themselves of rights granted by the FMLA.

*Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166, 168 (2d Cir. 2017) (cleaned up).  Without the constructive discharge claim, which the Court finds the Complaint fails to plausibly allege, Plaintiff does not state a claim for which relief can be granted under the FMLA.

First, Plaintiff does not state a claim for 'interference,' as her allegations plainly assert that she received paid time for each FMLA-related absence that she requested.[1]  To the extent that her allegations that she was "required to be responsive to calls and emails, and to be continuously available for meetings" on September 28, 2021, Compl. ¶ 26, attempt to state a claim for interference, other courts in this district have found that facts akin to this fail to do so. *See, e.g. Reilly v. Revlon*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009) ("Fielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise

---

[1] Plaintiff does allege that Tuccillo planned to "withdraw[] her pre-approved Paid Time Off ("PTO") request for the end of the month" on December 7, 2021, Compl. ¶ 39, but this was for a *non*-FMLA absence.  In any event, she resigned that same day, *id*. ¶ 41, and thus was never denied the requested time off.

of an employee's FMLA rights.  When limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls."); *see also Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910–11 (E.D. Mich. 2007).  The allegations that she was required to "finalize a presentation" with a co-worker on October 27 and 28, 2021 fare no better.  *See* Compl. ¶¶ 27–28.

Second, although Plaintiff is not required to establish that she suffered constructive discharge to state a 'retaliation' claim, *see Powell v. Dep't of Educ.*, No. 14-cv-2362 (PKC), 2015 WL 5772211, at *6 (E.D.N.Y. Sept. 30, 2015), she must allege some "adverse employment action . . . likely to dissuade a reasonable worker" from exercising their FMLA rights, *id*.  Her Complaint fails to do so.  Traditional "adverse employment actions include 'materially adverse changes in the terms and conditions of employment,' such as 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished responsibilities.'"  *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 470–71 (S.D.N.Y. 2011) (quoting *Zelnik v. Fashion Inst. of Tech*, 464 F.3d 217, 225–26 (2d Cir. 2006)) (cleaned up).  Even liberally construed at the 12(b)(6) stage, the Complaint does not allege any of these adverse employment actions here.

Furthermore, notwithstanding the Complaint's generic demand for "such other and further relief as the Court may deem equitable," Compl. ¶ 52(E), without a constructive discharge claim, Plaintiff has no actionable claim for equitable relief.  She is not entitled to reinstatement, for instance, nor to injunctive relief as to any purportedly unlawful practices by NYU Langone as a former employee.  *See Oakley v. Verizon Communs., Inc.*, 2012 WL 335657, at *41–42 (S.D.N.Y. Feb. 1, 2012) ("Former employees lack standing to obtain injunctive relief because they are no longer affected by the challenged policies.").

### III. Plaintiff Seeks Damages Unavailable Under the FMLA

Even assuming the Complaint did state a claim under the FMLA, Plaintiff seeks damages that are unavailable in actions brought under the FMLA as a matter of law. Unlike other federal employment statutes, the FMLA does not provide any cause of action for "pain and suffering [or] emotional distress . . . suffered as a result of an FMLA violation." *Smith*, 769 F. Supp. 2d at 469 n.23 (collecting cases). Plaintiff's attempt to seek punitive damages is similarly misplaced, as courts in this district have found that the FMLA does not provide for such punitive recovery. *See Vicioso v. Pisa Bros., Inc.*, 1998 WL 355415, at *12 (S.D.N.Y. July 1, 1997). The FMLA specifically enumerates "the types of damages that an employer may be liable for, and it includes damages only insofar as they are the actual monetary losses of the employee such as salary and benefits and certain liquidated damages." *Smith*, 769 F. Supp. 2d at 469 n.23. Finally, to the extent that Plaintiff seeks nominal damages for any alleged violations of the FMLA, every Circuit to consider the issue has held that the FMLA does not allow for the recovery of nominal damages, and this Court will not break from their reasoning. *See, e.g., Brandt v. City of Cedar Falls*, 37 F.4th 470, 479 (8th Cir. 2022) ("[W]e join our sister circuits that have concluded that nominal damages are not recoverable because they are not included in the specific, statutorily prescribed damages under the FMLA."); *Montgomery v. Maryland*, 72 F. App'x 17, 19 (4th Cir. 2003); *Walker v. UPS*, 240 F.3d 1268, 1278 (10th Cir. 2001); *Cianci v. Pettibone Corp., Beardsley Piper Div.*, 152 F.3d 723, 728–29 (7th Cir. 1998).

### IV. Leave to Amend

Having identified the pleading failures described above in the first instance, the Court follows the "usual practice" in this Circuit and grants the motion to dismiss the Complaint without prejudice. *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F.

Supp. 3d 401, 446–47 (S.D.N.Y. 2014) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). Because it is conceivable that Plaintiff could plead additional facts to remedy the pleading deficiencies identified herein, she is granted leave to amend the Complaint within thirty (30) days of this order, provided there is a good faith basis for doing so.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is granted without prejudice. The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 16 and 23.

SO ORDERED.

Dated:   December 5, 2022
         New York, New York

                                            Hon. Ronnie Abrams
                                            United States District Judge